UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DAVION HADDEN,
      Petitioner,

v.                                    Case No.:  4:19cv439/MCR/EMT

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Davion Hadden (Hadden) has filed a counseled amended petition for writ of habeas corpus and supporting memorandum under 28 U.S.C. § 2254 (ECF Nos. 3, 9).  Respondent (the State) answered, providing relevant portions of the state court record (ECF No. 17).  Hadden replied (ECF No. 19).

The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Hadden is not entitled to habeas relief.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Hadden challenges the judgment and sentence entered in the Circuit Court in and for Leon County, Florida, Case No. 2014-CF-2958 (ECF No. 1 at 1).[1]  Hadden was charged with one count of criminal use of personal identification information (Count I) and one count of grand theft (Count II) (ECF No. 17-1 at 10).[2]

On August 26, 2015, Hadden signed a written two-page Plea and Acknowledgement of Rights (ECF No. 17-1 at 44–45).  The plea agreement stated Hadden agreed to enter a no contest plea to both charges, with no agreement with the State as to sentence (*id.*).  The parties presented the plea agreement to the court the same day that Hadden and defense counsel signed it (*see* ECF No. 17-1 at 44–45 (plea agreement); ECF No. 17-2 (transcript of plea hearing)).  The court conducted a colloquy and concluded that Hadden understood the nature of the charges against him and the consequences of his plea; that he had the advice of competent counsel; and that his decision to enter an open plea was freely and

---

[1]  Hadden also faced multiple charges in three other cases from 2014 and a violation of probation (VOP) charge in three cases from 2012 (*see* ECF No. 17 at 1; *see also* ECF No. 17-1 at 35–43), but the only judgment at issue in this habeas case is the judgment in Case No. 2014-CF-2958.

[2]  References to the state court record are to the page numbers appearing at the bottom right of the page.

Case No.:  4:19cv439/MCR/EMT

voluntarily made (ECF No. 17-2 at 92).  The court set a sentencing hearing for the next week, on September 2, 2015 (*id.* at 92–93).

On September 2, 2015, the court sentenced Hadden in Case No. 2014-CF-2958 to concurrent terms of five years in prison on the two counts, to run consecutively to the sentence Hadden was currently serving (a five-year VOP sentence imposed on June 24, 2015) (ECF No. 17-1 at 72).  In Case No. 2014-CF-2555, the court sentenced Hadden to concurrent five-year terms on the eight counts, to run consecutively to the sentence in Case No. 2014-CF-2958 and consecutively to the sentence he was currently serving (again, the VOP sentence) (*id.* at 72–73).  Hadden thus faced a total sentence of fifteen years.  The judgment rendered the same day (*id.* at 49–57).

Hadden appealed his sentence to the Florida First District Court of Appeal (First DCA), Case No. 1D15-4227 (*see* ECF No. 17-1 at 59).  Hadden's counsel filed a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court (ECF No. 17-3).  The First DCA affirmed the judgment and sentence on June 3, 2016, per curiam and without written opinion (*see* ECF No. 17-5).   *Hadden v. State*, 192 So. 3d 47 (Fla. 1st DCA 2016) (Table).  The mandate issued June 29, 2016 (*see* ECF No. 17-5).

On April 6, 2017, Hadden filed a pro se motion for post-conviction relief in the state circuit court, under Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 17-6 at 4–11).  Hadden filed an amended Rule 3.850 motion on May 8, 2017 (*id.* at 14–20).  The circuit court held an evidentiary hearing on February 28, 2018 (ECF No. 17-6 at 33–75).  At the conclusion of the hearing, the court denied Hadden's post-conviction claims, stating its reasons for doing so on the record (*id.* at 64–67).  On April 13, 2018, the court issued a written order denying Hadden's Rule 3.850 motion for the reasons stated on the record of the evidentiary hearing (*id.* at 83).

Hadden appealed the circuit court's decision to the First DCA, Case No. 1D18-1589 (ECF No. 17-8).  On April 11, 2019, the First DCA affirmed the circuit court's decision per curiam and without written opinion (ECF No. 17-11).  *Hadden v. State*, 268 So. 3d 682 (Fla. 1st DCA 2019) (Table).  The mandate issued May 9, 2019 (ECF No. 17-11).

Hadden filed his counseled federal habeas petition on September 9, 2019, and his amended petition on October 3, 2019 (ECF Nos. 1, 3).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United

States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the

"clearly established Federal law," namely, "the governing legal principle or

principles set forth by the Supreme Court at the time the state court render[ed] its

decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the

governing legal principle, the federal court determines whether the state court's

adjudication is contrary to the clearly established Supreme Court case law.  The

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice
Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in
parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)
in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices
Souter, Ginsburg, and Breyer.

adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*,

633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).  AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102.  The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no

> further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.    HADDEN'S CLAIMS

    **A.    Ground One:  "The Petitioner's Constitutional rights were violated when counsel failed to adequately represent the Petitioner during the plea process."**

Hadden contends his trial counsel, Attorney Scott Miller, failed to advise him of the maximum sentence he could receive by entering an open plea, including by failing to advise him of the risk of receiving consecutive sentences (ECF No. 3 at 5–6; ECF No. 9 at 10–13; ECF No. 21). Hadden alleges if he had known he could receive a total sentence of fifteen years (consecutive five-year sentences in the two 2014 cases in which he entered open pleas, on top of the five-year sentence previously imposed for the VOP in the 2012 cases), he would have taken a four-year plea offer or insisted on going to trial (*id.*).[4]

Hadden states he presented this claim in his Rule 3.850 motion and his post-conviction appeal (*see* ECF No. 3 at 6; ECF No. 9 at 10–13).

The State contends Ground One "may be unexhausted" (ECF No. 17 at 22–23). The State acknowledges that the state post-conviction court treated the consecutive sentence claim as having been raised in Hadden's Rule 3.850 motion, despite Hadden's actually having presented it in a Rule 3.800(c) motion filed prior to the Rule 3.850 motion (*id.* at 22–23). Without conceding exhaustion, the State

---

[4] Hadden's § 2254 petition and supporting memorandum include additional facts about the four-year plea offer (*see* ECF No. 3 at 5–6; ECF No. 9 at 3–6). Hadden states he included these facts only to provide context, and that the sole issue he presents in Ground One is counsel's ineffectiveness for failing to advise him of the maximum sentence he would receive by entering an open plea (*see* ECF No. 21).

argues that Ground One would be exhausted if one assumed that a claim raised for the first time in testimony at an evidentiary hearing was sufficient (*id.*).

Also on the issue of exhaustion, the State argues Hadden did not present the state court with precisely the same argument he presents here. The State asserts that in state court, Hadden argued he would not have entered an open plea had he known he could possibly receive a total sentence of **fifty** years (if the court ran all of the five-year sentences on the ten counts in the 2014 cases consecutively) (*see* ECF No. 17 at 23) (emphasis added). Whereas here, Hadden argues he would not have entered an open plea in Case No. 2014-CF-2958 had he known he could possibly receive a sentence of **fifteen** years (if the court imposed concurrent five-year sentences within each of the two 2014 cases, but ran the sentence in each 2014 case consecutively to each other and consecutively to the to the five-year VOP sentence) (*id.*) (emphasis added).

With respect to the merits of Ground One, the State contends the state court's adjudication of Ground One was not contrary to or an unreasonable application of clearly established federal law; nor was it based upon an unreasonable determination of fact (ECF No. 17 at 27–28).

In response to the State's exhaustion argument, Hadden contends the state court's addressing the consecutive-sentence claim in both testimony and in its

ultimate ruling demonstrates that the purpose of the exhaustion requirement was satisfied (ECF No. 19 at 1–2).  Hadden argues that to the extent the fifteen-year argument is unexhausted, he is entitled to federal review under *Martinez v. Ryan*, 566 U.S. 1 (2012), because he was not represented by counsel in the Rule 3.850 proceeding (*id.* at 2–4).

### 1.    Exhaustion

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the

state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344–45). Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

Here, the transcript of the post-conviction evidentiary hearing, which will be discussed in detail *infra*, demonstrates that the state court understood that Hadden was presenting a challenge to his open plea on the ground that defense counsel failed to advise him of his maximum sentence exposure due to the possibility that the court could run the sentences in each the 2014 cases consecutively to each other and consecutively to the previously imposed VOP sentence. At the commencement of the evidentiary hearing, the court verified with Hadden that one of the issues he was presenting was a claim that he did not understand, at the time he entered his open plea, that the court could impose consecutive sentences (*see* ECF No. 17-6 at 87). After Hadden offered testimony on a different claim, the court stated, "Now, about the consecutive . . . that the sentences—that you didn't know they could run consecutive or not, . . . tell me whatever you want to about that." (*id.* at 93). Hadden

then offered testimony on this claim (*id.* at 93–99, 112–14).  At the conclusion of the hearing, the circuit court denied Hadden's claim that he did not know, at the time he entered his open plea, that the court could run his sentences consecutively (*id.* at 117–18).

The claim that the state court understood Hadden to be presenting, and the claim on which Hadden focused his testimony, was the same claim that Hadden presents here in Ground One of his § 2254 petition, i.e., Attorney Miller failed to advise him of the possibility that the court could run any or all of his five-year sentences consecutively.  Further, the parties argued this claim in post-conviction appellate briefs (*see* ECF No. 17-8 at 8–9; ECF No. 17-9 at 19–21).

The state court record demonstrates that Hadden satisfied the exhaustion requirement as to Ground One.  Therefore, the court will proceed to determine whether Hadden has shown he is entitled to relief under § 2254(d).

### 2. Review Under § 2254(d)

### a. Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *See id.* at 687.  "First,

petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.'   Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"   *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).   The two-part test articulated in *Strickland*, applies to claims that counsel was ineffective during the plea process.   *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 140, 147–51 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

In *Premo v. Moore*, the Supreme Court elaborated on the importance of strict adherence to the *Strickland* standard in the plea context:

> Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context.   First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. . . .
>
> Second, ineffective assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks

to protect.  *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, 562 U.S. at 105, 131 S. Ct. 770.  Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*.  The prospect that a plea deal will afterwards be unraveled when a court second guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

Whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: reasonable competence in representing the accused.  *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052.  In applying and defining this standard substantial deference must be accorded to counsel's judgment.  *Id.* at 689, 104 S. Ct. 2052.

*Premo v. Moore*, 562 U.S. 115, 124–26 (2011).

*Strickland*'s prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.  The defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Premo*, 562 U.S. at 129.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  "Surmounting

*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### b.    Review of State Court's Decision

At the post-conviction evidentiary hearing, Hadden testified that the same judge (Judge Carroll) presided over all of his criminal proceedings in 2014, including his VOP in the three 2012 cases and his new charges in the four 2014 cases (*see* ECF No. 17-6 at 93). Hadden testified he was sentenced on the VOP in the 2012 cases prior to entering his plea in 2014-CF-2958 (the case at issue here) (*id.* at 93, 97–98). Hadden testified that before Judge Carroll imposed sentence on the VOP, Judge Carroll stated he did not tend to place people back on probation who he did not believe could complete it, and he did not tend to impose consecutive

sentences (*id.*).    Hadden testified he interpreted Judge Carroll's comments as meaning, essentially, that at no time would Judge Carroll impose consecutive sentences on Petitioner (*see id.* at 93, 95).  More particularly, Petitioner stated:

> So after he sentenced me, I took that as that I would not be given a consecutive sentence anytime by [Judge] Carroll or anytime I step into the courtroom.  So I still had open cases so I went back and looked over my cases and looked over my charges, and I—and I pointed out those that I had a small chance of winning if I took those cases to trial.
>
> So I told Mr. Miller [defense counsel] that I want to plea out, open plea out, to these certain charges because I feel like it was in my best interest and because [Judge] Carroll would not give me a consecutive sentence.  Mr. Miller asked, was I sure, and I told him yes, sir, I would like to do this.  I would like to have a consecutive—I would like to open plea out in front of the judge.
>
> Mr. Miller never told me that I could receive a consecutive sentence.  He never told me that my max that I would receive [sic].  So when I went into that hearing, I thought that, okay, the max for these charges, which were F3s [third degree felonies], were five years and I already have five years that I got from [Judge] Carroll from the VOP hearing.
>
> So when I went into that hearing and when I open pled out, my belief was, okay, the max I could get was five years and I was going to get a concurrent sentence.  I didn't think that—I didn't know, neither was I informed, that I could receive a consecutive sentence.  I open pled out to ten counts of—all the ten counts were felonies, were F3s, which I can receive a maximum of five years for each count; therefore, my max was 50 years that I could have received in that one hearing.
>
> If I was informed that I could have received a 50-year sentence by going into that courtroom, ma'am, I wouldn't—I wouldn't have

open pled out in front of Mr. Carroll, and I would have insisted on going
to trial and just trying my chances.

(ECF No. 17-6 at 93–95).

The Rule 3.850 court asked Hadden, "Did you—did you know what the word
'consecutive' meant?" (ECF No. 17-6 at 95). Hadden responded yes (*id.*). The court
also asked, "And you know what 'concurrent' means?" (*id.*). Again, Hadden
responded yes (*id.*). The court then asked Hadden to clarify when Judge Carroll
made the statement regarding his tendency not to impose consecutive sentences, and
Hadden responded that it was during the sentencing hearing on the 2012 VOPs (*id.*
at 96).

The State advised the court that Hadden had attached one page of the
transcript of the VOP sentencing hearing to his motion for reduction of sentence,
which the court had previously denied (ECF No. 17-6 at 96). The court reviewed
the portion of the transcript and asked Hadden if it was the statement of Judge Carroll
to which Hadden referred in his testimony (*id.* at 96–97). Hadden stated yes (*id.* at
97). Judge Carroll's statement was the following:

> I am going to have the sentences in these 2012 cases run
> concurrently and I'm not putting probation on the back end. We do
> have the other cases that are still out there and those will be addressed
> at another day. But I think these are consistent with the sentencing
> structure that I have adopted since I have been on the bench, where I

don't tend to give consecutive sentences.  And I also don't tend to put people on probation that I don't think can handle probation.

(ECF No. 17-7 at 319).

Hadden reiterated (in his evidentiary hearing testimony) that Judge Carroll made this statement during his sentencing on the 2012 VOPs, which occurred prior to Hadden's entering his open plea in Case No. 2014-CF-2958 (ECF No. 17-6 at 97–98).  Hadden also reiterated that when he entered the open plea in Case No. 2014-CF-2958, he did not know he could receive consecutive sentences (*id.* at 99).

Attorney Miller testified at the evidentiary hearing.  Miller testified that Hadden had a series of VOP cases as well as four new felony cases, all of which involved Hadden's using other people's credit cards (ECF No. 17-6 at 103).  Miller testified Hadden "scored out" to approximately eleven years in prison, so he (Miller) approached the prosecutor and tried to convince him that Hadden did not deserve eleven years (*id.* at 103–04).  Attorney Miller testified that the prosecutor agreed that four years would be a sufficient punishment, so Miller relayed this four-year plea offer to Hadden (*id.*).  Miller testified Hadden "wasn't interested in taking a plea . . . [a]ny plea" (*id.* at 104).  Attorney Miller continued:

> I suggested he reconsider because, due to his circumstances, they would probably proceed with the VOP first.  There's a lower burden of proof. And if he lost the VOP, he would very likely end up with a consecutive sentence if he continued to lose with the new cases.

(ECF No. 17-6 at 105). Miller testified they proceeded to the VOP, and Hadden was found in violation (*id.*).

Attorney Miller testified that after the VOP hearing, the four-year plea offer was no longer available (ECF No. 17-6 at 105). Miller testified that the only good thing that resulted from the VOP hearing was that the VOPs were not included in Hadden's scoresheet for the new charges in the 2014 cases, so Hadden's lowest permissible sentence was less than eleven years (*id.*). Miller testified:

> I advised [Hadden] that we should go ahead and try take [sic] care of the rest of the cases and try to get the judge to do something concurrent.
> . . . .
> Mr. Hadden—and I explained, because we had already heard the witnesses during the VOP hearing, how he—I didn't think he was going to win certainly all the counts. He seemed to think he could win some of them, and I didn't necessarily disagree with him because there's a lot of counts and a lot of witnesses, and I didn't know if the State was going to be able to turn them all up.
>
> But Mr. Hadden said, well, okay, what I'll do, I'll go ahead and plead out to certain counts but not others. And I said that's probably not a good idea due to the overall nature of things, but he insisted on doing it so that's how he got his second five years.

(ECF No. 17-6 at 106).

The State asked Attorney Miller, "You advised him of the potential of getting consecutive time and he still decided to plea open, and that's how we ended upon in the situation we're in today?" (ECF No. 17-6 at 107).  Miller answered yes (*id.*).

On cross-examination, Hadden asked Attorney Miller what Miller advised him to do when he (Hadden) told Miller that he wanted to enter an open plea to some of the new charges (ECF No. 17-6 at 110).  Miller responded:

> I remember telling you that it was a bad idea to try and take care of your counts in separate bites, because essentially what happened could happen, okay, that you could end up—more likely you could end up with consecutive sentences.

(ECF No. 17-6 at 110).  The cross-examination continued:

> Q [by Hadden].  So you do remember telling me that I could receive up to a 50-year sentence?
>
> A.  I don't remember saying 50 years.  I remember we talked about consecutive sentences but you had—you had a lot of counts.
>
> Q.  Do you remember the statement that [Judge] Carroll made in the sentencing hearing about not tending to run consecutive sentences?
>
> A.  I do not remember that, no, sir.
>
> Q.  Do you remember explaining the open plea process to me?
>
> A.  Yes.
>
> Q.  And the consequences of open pleaing [sic] as well?
>
> A.  Yes.

(ECF No. 17-6 at 111).

On re-direct examination, Attorney Miller testified he never made any guarantees to Hadden about what Judge Carroll would do if Hadden entered an open plea (ECF No. 17-6 at 111).

The post-conviction court conducted its own inquiry of Hadden. Hadden testified he was twenty-two years old and had completed "some college" at the time he entered the open plea (ECF No. 17-6 at 112). With respect to Hadden's experience in the criminal justice system, Hadden testified that the first time he entered an open plea was when he did so on the original charges in the 2012 cases, which resulted in his probationary sentences and eventually the VOPs (*id.* at 114).

At the conclusion of the evidentiary hearing, the court rejected Hadden's post-conviction claims (ECF No. 17-6 at 116–18). Specifically with regard to Hadden's ineffective assistance of trial counsel (IATC) claim based upon counsel's alleged failure to advise him that he could receive consecutive sentences, the court denied the claim for the following reasons:

> As to the consecutive sentencing issue, the way I think—the way I believe this shakes out is that the defense hasn't met a burden to show me that there was some kind of unfair misunderstanding here. I believe you knew what consecutive was. You knew it was possible. You knew it before you entered your open plea. The question is what you thought would happen.

> I believe that because of the statement made at the probation hearing, you felt confident, even though it wasn't a promise, and the exact words were "tend" and not a promise or a threat of any kind by the judge; that it was really wishful thinking and hopeful thinking and a belief on your part but not based upon any wrongdoing or wrong saying of either the judge, or your attorney or the state attorney for that matter. So I'll deny relief on that.

(ECF No. 17-6 at 66–67). The court directed the State to prepare a proposed order and attach the transcript of the evidentiary hearing, the written plea agreement, the transcript of the plea and sentencing hearings, and the portion of the transcript of the VOP sentencing to which Hadden referred in his testimony (*id.* at 119–21).

As previously noted, Hadden appealed the circuit court's decision to the First DCA, and argued this IATC claim as Claim Two (ECF No. 17-8 at 5–6). The First DCA summarily affirmed the circuit court's decision (ECF No. 17-11).

The First DCA's summary affirmance is an "adjudication on the merits" of Hadden's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

decision can be deemed to have been 'adjudicated on the merits.'").  Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Hadden contends the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing (ECF No. 9 at 10, 12–13).  Hadden contends the record is not persuasive of the court's finding that Hadden "knew what consecutive was" (*id.* at 12).  Hadden acknowledges that the court asked him, "[D]id you know what the word 'consecutive' meant?"; and he answered yes (*id.*).  Hadden alleges the court then asked him, "And you know what 'concurrent means?'; and he again answered yes (*id.*).  Hadden contends that as a result of the court's change in the tense of its questions (from past to present tense), it cannot be concluded that Hadden testified to what he knew at the time he entered his plea, or whether he testified to what he knew at the time of the evidentiary hearing (*id.*).

Hadden further contends other evidence in the state court record establishes his entitlement to relief (*see* ECF No. 9 at 13).  Hadden points to his own testimony at the evidentiary hearing, wherein he stated he was not aware he could receive a

total of fifteen years due to running his sentences in the three cases consecutively (*id.*). Hadden also points to the plea colloquy and argues he was never advised of the maximum sentence, nor was he questioned about whether he knew what a consecutive sentence was (*id.*). Hadden also argues that Attorney Miller's acknowledgement, during the evidentiary hearing, that Hadden's sentencing possibilities were complicated due to the number of charges supports a reasonable conclusion that Hadden also struggled with understanding what he was facing (*id.*).

The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)). Hadden has not done so here. The fact that the state court used different verb tenses in questioning Hadden about his knowledge of the meaning of "consecutive" and "concurrent" does not clearly or convincingly show that the state court's factual finding regarding Hadden's knowledge of the meaning of "consecutive" was unreasonable.

Further, the other evidence in the state court record supports the state court's finding that Hadden knew he could receive consecutive sentences. Attorney Miller testified at the evidentiary hearing, in response to direct questioning by the State,

that he advised Hadden of the potential of receiving consecutive sentences before Hadden entered an open plea.  Moreover, by signing the written plea agreement, Hadden confirmed he had carefully read both pages of the plea agreement (ECF No. 17-1 at 44–45).  The plea agreement stated that the maximum penalty for each charge was five years, and by signing the agreement, Hadden confirmed he was aware of those maximum penalties (*id.*).  Also by signing the plea agreement, Hadden affirmed that no one promised him anything other than what was stated in the agreement and in open court in front of the judge (*id.*).

At the plea hearing, Attorney Miller announced that Hadden was entering a no contest plea to both charges in Case No. 2014-CF-2958, and that each count was punishable by up to five years (*id.* at 84).  Attorney Miller announced that Hadden was additionally entering no contest pleas to eight of the forty-one counts charged in Case No. 2014-CF-2555 (*see* ECF No. 17-2 at 84–85; *see also* ECF No. 17-1 at 38–43).  Attorney Miller announced that each of those eight counts was also punishable by up to five years (ECF No. 17-2 at 85).  Attorney Miller announced that Hadden wished to proceed to trial on the remaining thirty-three counts in Case No. 2014-CF-2555, as well as all of the counts in two other pending cases, Case No. 2014-CF-790 and 2014-CF-2299 (*see* ECF No. 17-2 at 85–86; *see also* ECF No. 17-1 at 35, 37).

At the plea hearing (held the same day Hadden signed the plea agreement), Hadden was sworn, and Judge Carroll announced that each of the ten counts to which Hadden was pleading carried a maximum penalty of five years (ECF No. 17-2 at 87–88). Judge Carroll asked Hadden if he understood that, and Hadden responded yes (*id.* at 88). Judge Carroll asked Hadden if he believed that entering into the open plea was in his best interests, and Hadden responded yes (*id.* at 89). Judge Carroll asked Hadden if anyone had promised or guaranteed him what sentence the court would impose, and Hadden responded no (*id.*). Hadden verbally acknowledged that he reviewed the written plea agreement with Attorney Miller, that he did not have any questions, and that he signed the written agreement (*id.* at 90). Judge Carroll announced each of the eight charges to which Hadden was pleading in Case No. 2014-CF-2555, and that each charge carried a maximum penalty of five years (*id.* at 90–91). Judge Carroll then announced each of the two charges to which Hadden was pleading in Case No. 2014-CF-2958, and that each charge carried a maximum penalty of five years (*id.* at 91). Judge Carroll asked Hadden if he understood that was the basis of his open plea in each case, and Hadden responded yes (*id.* at 91–92). Judge Carroll asked Hadden one final time if he wished to proceed with the open pleas, and Hadden responded yes (*id.* at 92).

Based on the state court's determination that Hadden knew, at the time he entered his open plea following imposition of the five-year VOP sentence, that the court could impose consecutive sentences on each count to which he pled, fairminded jurists could concur in the court's conclusion that Hadden's plea was **not** the product of ineffective assistance of counsel; rather, it was the product of Hadden's knowing and voluntary decision to roll the dice with the hope that the judge would run his sentences concurrently. The fact that Hadden's decision led to a different outcome than he had hoped does not mean he didn't know what he was doing when he made the decision.

Hadden failed to satisfy the § 2254(d) standard as to Ground One. Therefore, he is not entitled to federal habeas relief on this claim.

**B.    Ground Two: "Trial counsel failed to act as the counsel required under the United States Constitution when he failed to adequately represent the Petitioner during his sentencing hearing."**

Hadden alleges after he entered the open plea, the case was set for sentencing (ECF No. 3 at 7). He alleges defense counsel failed to have him evaluated and then present evidence from that evaluation at sentencing (ECF No. 3 at 7; ECF No. 9 at 14–15). Hadden also contends counsel failed to present evidence from his family and friends that established he had significant support and would be able to remain a law-abiding citizen (ECF No. 9 at 15). Hadden alleges if counsel had presented

evidence in support of a lower sentence, there is a reasonable probability the outcome of the sentencing proceeding would have been different (ECF No. 3 at 7; ECF No. 9 at 15).  Hadden concedes he did not exhaust this claim in the state courts (*see* ECF No. 3 at 7–9).  Relying on *Martinez*, Hadden contends the procedural default was caused by the fact that he did not have counsel in the Rule 3.850 proceeding (*id.*).

The State agrees that Ground Two is unexhausted (ECF No. 17 at 29).  The State contends the rational for *Martinez*—that federal courts may hear substantial claims that are not exhausted in state court because counsel erred or because an unrepresented prisoner did not have the training or expertise to realize that fact—is not present here, because the record demonstrates Hadden was aware of this IATC claim before he filed his Rule 3.850 motion (*id.* at 30).

The State argues that even if *Martinez* applied, Hadden has not satisfied its standard, because Hadden has not stated a substantial IATC claim (ECF No. 17 at 31–35).  The State argues Hadden has not identified, let alone elaborated on, what sort of evaluation defense counsel "should have engaged" (*id.*).  Further, Hadden does not identify the family and friends whose testimony should have been presented, nor does Hadden state with any specificity what their testimony would be (*id.*).  And any testimony suggesting that Hadden was "law-abiding" would have

been unconvincing, considering he was already a convicted felon facing a prison sentence for the 2012 VOPs, and he was facing more than 42 counts of new charges in the 2014 cases (*id.*).

Moreover, the State contends the cases upon which Hadden relies to show prejudice resulting from counsel's failure to present mitigating evidence are death-penalty appeals where mitigation was a matter of life and death (ECF No. 17 at 34). The State contends these cases are not persuasive in this non-capital case (*id.* at 34–35).

In response to the State's argument regarding the lack of specifics as to what mitigation evidence counsel could have presented, Hadden contends an evidentiary hearing is necessary to establish these facts (ECF No. 19 at 7). Hadden alleges he had family and friends who were "willing to show their support, regardless of what the substance of their testimony would be" (*id.* at 7–8). Hadden argues it is the showing of support that would have been significant at sentencing (*id.*).

Prior to *Martinez*, habeas petitioners were barred from establishing cause by relying on errors made by their state post-conviction counsel. *See Coleman*, 501 U.S. 722, 752–53 (1991). In *Martinez*, however, the Supreme Court created a limited, equitable exception to *Coleman* where: (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as

opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland*" (or the prisoner did not have post-conviction counsel at all); and (3) "the underlying ineffective-assistance-of- trial-counsel claim is a substantial one." *Martinez*, 566 U.S. at 14 (citations omitted).

To satisfy *Martinez*'s third prong, the petitioner "must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El*, *supra*, which described the standard for issuance of a certificate of appealability). The Eleventh Circuit construes the Supreme Court's citation to *Miller-El* "to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires 'a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2)." *Hittson*, 759 F.3d at 1269. A petitioner satisfies the COA standard "by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. The Eleventh Circuit elaborated on the "substantial claim" standard as follows:

> We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that

point to a real possibility of constitutional error."  Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

> Thus, we examine the allegations in . . . [the] § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson*, 759 F.3d at 1270.

To demonstrate entitlement to an evidentiary hearing, a § 2254 petitioner must "proffer evidence that, if true, would entitle him to relief."  *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1291 (11th Cir.2012) (alteration omitted) (quotation marks omitted).

Here, Hadden argues that because he was facing a significant criminal sentence, defense counsel had a substantial responsibility to "try and get a concurrent or short sentence" (ECF No. 19 at 7).  The record shows that Attorney Miller did just that.  Miller argued that Hadden had already been sentenced to five years in prison on the VOP (ECF No. 17-1 at 67–68).  Miller argued that concurrent five-year sentences (i.e., a total of five years for the VOPs and the new charges to which Hadden entered an open plea) were sufficient punishment for the new offenses, considering the circumstances and the minor gravity of the offenses (*id.*).  Attorney Miller requested that, if the court intended to impose a consecutive sentence, the

court impose a guidelines sentence (nineteen months) instead of the maximum (fifty years) (*id.*; *see also* ECF No. 17-1 at 46–48 (sentencing guidelines scoresheet)).

Hadden argues Attorney Miller should have had him evaluated and then presented the results of the evaluation at sentencing. But Hadden does not specify the nature of the evaluation defense counsel should have obtained. Nor does Hadden allege any facts or proffer any evidence suggesting what the evaluation would have shown. Hadden has not stated facts which "point to a real possibility of constitutional error" at sentencing with respect to counsel's failure to have him evaluated. *See Hittson*, 759 F.3d at 1270 (internal quotation marks and citation omitted).

The same is true of Hadden's faulting counsel for failing to present evidence from Hadden's friends and family. Hadden alleges such evidence would have shown that he had significant support and would be able to remain a law-abiding citizen, but he does not actually identify anyone who would have testified, nor does he proffer any evidence suggesting what any particular person's testimony would have been.

Further, it is apparent from the state court record that the sentencing judge, Judge Carroll, was familiar with Hadden, because he had presided over Hadden's VOP sentencing just three months prior. Indeed, the prosecutor referenced the VOP

sentencing in arguing that Judge Carroll should impose consecutive sentences (ECF

No. 17-1 at 68–70).  The prosecutor argued:

> I won't go all the way back through all the charges Mr. Hadden
> had picked up like I did at our last sentencing but essentially the State's
> position hasn't changed.  You know, you have ten F3's [third degree
> felonies] today.  You've got 50 years to work with and Mr. Hadden has
> earned every day of it, whatever you give him.
>
> We learned at the last sentencing [the VOP sentencing] that Mr.
> Hadden wasn't down on his luck.  He wasn't out of options.  **He came
> from a good home that supported him**, but he chose rather than
> pursuing that life to be a professional thief instead.
> . . . .
> There was never even a thought of stopping these crimes when
> he was placed on probation in 2012.  Even the second time he was
> placed on probation the criminal activity continued through.  And once
> he was tipped off that search warrants were being executed and there
> was an investigation he fled the county and headed down to south
> Florida.  When he was finally apprehended and questioned he literally
> laughed in the face of the detectives and told them that they didn't have
> anything on them and he wasn't worried about it.
>
> There is no reason to subject the community to this type of
> individual.  He's a remorseless career criminal.  He's young but he
> chose his path and he should not be allowed to continue.  The State feels
> a prison sentence is appropriate and it should be consecutive to what
> he's already served.
>
> We have split these cases up and this wasn't a packaged deal.
> We're having a separate sentencing.  Mr. Hadden is not even here
> before you accepting responsibility for everything he's charged with.
> He has cherry picked some counts to test us to see what the Court is
> going to do whether or not he's looking at consecutive sentences on the
> rest of these charges.   Because remember he's still got cases out there
> with second degree felonies that carry a higher maximum.

So we should not allow Mr. Hadden to use a divide and conquer strategy where he comes in for four sentencings each with a low value on the score sheet and walks out the door with what he got for the first sentence [five years].

I'd suggest—I'd make the same suggestion for an ultimate sentence that I did at the VOP hearing, 30 years. The Court has much more jurisdiction now. Those F3 level 4's you can see on the score sheet have stacked up. The ten of them he's plead to does land him a minimum prison sentence but that score does not reflect the totality of the circumstances of the offenses and I think the court should keep that in mind when sentencing.

So, again, I'd say he's earned every year of every day of the available max before Your Honor, and I'd suggest that the court use as much as it can.

(ECF No. 17-1 at 68–70) (emphasis added).

Attorney Miller argued that it was inappropriate to consider the unresolved charges in determining Hadden's sentence on the ten charges presently before the court (ECF No. 17-1 at 71). Miller also took issue with the State's characterization of Hadden as entering a plea to test what the court would do in terms of sentencing:

I had discussions with the defendant and told him I didn't think this was the best way to resolve it. But the reason he's doing that is because these are the counts he feels like he should be held accountable for. Believe me, he's not trying to test and see what you're going to do because I told him it's probably not going to come out as well this way so there is a certain sincerity in the counts that he did plead to and we would ask the court to take that into consideration.

(ECF No. 17-1 at 71). In the end, Judge Carroll imposed a ten-year sentence (a total five-year sentence on the two counts in Case No. 2014-CF-2958, and a total five-year sentence on eight of the forty-one counts in Case No. 2014-CF-2555), to run consecutively to the five-year sentence he previously imposed on the VOP.

Considering the record and Hadden's failure to state facts that point to a real possibility that constitutional error occurred at sentencing, Hadden is not entitled to an evidentiary hearing or a federal merits review of Ground Two. Habeas relief should thus be denied on this claim.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting § 2253(c)(2)). "At the COA stage, the only question is whether

the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the amended petition for writ of habeas corpus (ECF No. 3) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 8th day of September 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**